v. U.S. Department of Agriculture, et al. Case number 17-5260, et al. State of Alaska, et al. Alaska Electric Light and Power, et al. v. United States Department of Agriculture, et al. Ms. Gramling, for the et al. Mr. Smeltzer, for the U.S. Department of Agriculture, et al. Mr. Fine, for the Appalachia Southeast Alaska Conservation Council, et al. Morning, Council. Ms. Gramling, please proceed when you're ready. Good morning. May it please the Court. My name is Mary Hunter Gramling, and I am representing the State of Alaska, arguing today from Alaska's capital city, Juneau, one of the many communities negatively impacted by the prohibitions of the VOCUS rule. Alaska is joined in these consolidated appeals by local governments, utility and power companies, chambers of commerce, leading industry groups for timber and mining interests, and then other Alaska business interests. The appellants request vacatur of the VOCUS rule due to violations of Alaska-specific laws, the Alaska National Interest Lands Conservation Act, ANILCA, the Tongass Timber Reform Act as an amendment to ANILCA, and the National Environmental Policy Act. Alaska is different. The United States Supreme Court has repeatedly and recently recognized this fact in its recent Sturgeon v. Frost decisions. In the Sturgeon cases, the Supreme Court considered a restrictive national regulation that violated a provision of ANILCA. The Court construed ANILCA according to its historical context and the purposes of the Act overall. The Court in Sturgeon discussed the background of protests of restrictive federal actions and executive actions that restricted development in the state and land selection rights that were under previous federal laws. Ms. Kramling, I'd like to ask you about where we are today in the case. As you know, there's been briefing on whether the claims are moot in light of further consideration of the applicability or not of the roadless rule to the Tongass. And one of the questions that's sort of nested in or raised by the claim of mootness is whether Alaska has standing based on impact in the Chugach. And when I'm thinking about that, there was a motion to dismiss based on mootness, but the underlying case was at the summary judgment stage. So my specific question is whether the state of Alaska can point to any evidence, as opposed to merely allegations, that the claims here implicate any harm flowing from the Chugach. Would the NEPA claim, if it were successful, remedy any harm to Alaska based on the Chugach? Would the Alaska Lands Act claim, if you were to prevail on it, remedy any identified harm in the record to Alaska flowing from events at the Chugach? And if you can help us out by pointing to the record where those harms are identified. So, as far as the Chugach is concerned, the Chugach is the second largest national forest in the national forest system. And so while most of the state's arguments, you know, we do have some Tongass specific arguments, the state also made statewide arguments. And the impacts on the Tongass are just more outsized than the impacts on the Chugach in some circumstances, but the state's statewide claims still apply to the Chugach, so it's not a specific Tongass related claim. And so in the record, this is a case that's being reviewed under the EIS and the APA, and so the state views it standing to be self-evident based on its comments and participation in the rulemaking process. As far as evidence in the record, I believe the joint appendix, page 50, deals with the Chugach, and then the state's complaint that paragraphs 55 through 57 also are specific to the Chugach. In the context of the motion to dismiss, the state also submitted an affidavit from its state forester that essentially said that he had reviewed the claims and agreed that they were still at issue as they were when we filed the complaint 10 years ago now. And then furthermore, in other cases, the courts, the Ninth Circuit specifically, have found that the receipt of revenue sharing from national forests can give the state standing. And so while the Cake Ninth Circuit case, that was an issue there, the same would be true for the Chugach, is that the state does receive revenues and has the potential to receive those revenues, and that was detailed in the state's complaint. And then additionally, with the Chugach, it is under the roadless rule prohibitions currently, and the roadless rule applies to approximately 98 to 99% of the Chugach. And so while the Chugach does not currently have as significant of a timber program as, say, the Tongass could have, or even other forests, that the roadless rule... Regardless whether there was logging going on in the Chugach or not, it was set in the year 2000-2001, and that payment will be made regardless of the roadless rule. So the payments by statute are determined by activities in those forests. So it doesn't matter whether the roadless rule is there or not there, they're going to get the same amount, the same payment, every year. So why is that? Where's the injury there? The injury there is because right now, or at least in the recent past, the schools, Rural Schools Act has set that amount, but that could go away, and then we would be under the statutory revenue sharing provision, and that is based on activities in those forests. And so the roadless rule prohibits development and the receipt of those revenues. In addition to the revenue issue, though... Are you saying that the roadless rule would prevent timber exploitation, and that the amount of the payment is calibrated to the degree of timber exploitation? I believe it's based on the total revenues. The total revenues from timber, or... I'm just having a little bit trouble following at a little bit more factual level. What is the activity that Alaska is claiming would change within the Chugach, and how is that change... What effect is that change going to have on Alaska? I think the closest that Alaska gets in being somewhat more particular is, as you mentioned, the declaration in response to the mootness briefing. But even there, it's not clear why some of the pest control and fire reduction measures are affected by the roadless rule. Are they being taken when the roadless rule doesn't apply, and then they're not taken when it does? The relationship between the challenge provisions and the harms just hasn't really been spelled out, and that's where I think we could use some help. Turning back to the land management type harms, the state is a neighboring land owner to areas of the Chugach National Forest. It has its own land management responsibilities, and then also private citizens within Alaska have land that borders the Chugach. The roadless rule has impacted the state's ability to conduct its own land management because the roadless rule, to a certain extent, prohibits the thinning and removal of deadfall of trees that then pests can then... There's an exception. No, the rule has an exception for just this type of situation you're talking about. It does not prohibit roads going in for the purpose of preventing wildfires or clearing or safety or whatever. There's an exception for that. The roadless rule doesn't affect that at all. The exception for safety, I believe, is more of an imminent threat than just a more proactive measure. Also, the roadless rule considered in the process having more of a lenient alternative that would have allowed for more active forest management to prevent pests and help curb wildfires. Instead, they limited the diameter of the thinning that could happen, so it was only smaller trees. What are you pointing to where the roadless rule is prohibiting the thinning that would otherwise be taking place? The exceptions... I apologize for not having the exact record site for me, but there was a small diameter limitation on thinning, and in the roadless rule decision, they anticipated that even with that, that timber cutting would be... There's a small diameter exception in the rule, but I guess what puzzles me a little bit is what my colleagues are getting at, which is I didn't see anything in the affidavit that was submitted in the response to the motion to dismiss or elsewhere on the record that elaborated on how exactly this would continue to harm Alaska vis-a-vis Chugach. At this stage, there needs to be evidence to bear that out, and I'm not aware of anywhere on the record where there is evidence that bears out how there would still be harm. In the record, the state certainly submitted its comments, and those comments include harms to the Chugach and the land management decisions that would flow from that, but generally speaking, the lack of roads has led to less active management of the forests in the Chugach. So these issues of wildfires and pests reach potentially a greater scale than they would have otherwise, presumably if the roadless rule had not been in effect, the forest managers would have greater flexibility to account for individual forest conditions and allow more timber cutting to address those. Commercial timber, I believe, can aid in the process of thinning and deadfall. Do we have any reason to think that, you mentioned that forest managers would have greater flexibility to do more timber cutting. Is there any reason to believe that it would in fact do more timber cutting for that purpose? So historically, the Chugach Forest did have a timber program, and due to infestations and changes of tree types, I believe, the timber harvest shortly before the roadless rule was very, very low, but there's no reason to expect that in the absence of the roadless rule that it couldn't rebound. But going back to the standing issue, the state had reasons to believe that its standing was self-evident in the district court proceedings, and my understanding is that this circuit, its standing is a concern that even after argument that you could take supplemental briefing and the state would be happy to provide that. Turning back to helpful, I mean, if there's, I don't know what you're thinking about in the comments, but if there are, if there are specifics regarding the Chugach in the comments that you can identify that, I think that's, you know, could be significant, but you can hear that we're, that we're struggling with the question of harm and also the question of whether it's caused by the roadless rule. Or by other factors and would be redressed were the state to prevail on this challenge. So we're really considering, I think, all those, all those questions. And this is bracketing, you know, assuming that there is a mootness problem, which is obviously not your motion. But because you're up first and the standing question is an important one that was helpful to hear from you on that. So I'd like to turn to the mootness question. The state's position, of course, is that the case is not moot. The 2020 Tongass exemption rule that was posted during the Trump administration, it has not been given any actual effect in the subsequent administration. The, the only effect that has really had has been for the purposes of this litigation to say that it's an effect, the, for any activities to happen in the Tongass, the forest plan would have to be amended as was required by the rule. And that has not happened yet. The Biden administration has paused activities and they've indicated that they're going to repeal and readopt the rule. So the state's position is that the federal government has a heavy burden to prove mootness, and that it cannot do so because it has voluntarily ceased the activity. And so it had to show that the harm has been repaired, which it has not, and that it won't recur. The federal government's arguments on mootness fail for that reason. Additionally, the relief requested for the Tongass in this case is a little bit different than the exemption rule. The exemption rule is under the premise that the roadless rule still exists. And so the relief. The state is asking for here is to vacate the rule statewide and potentially nationwide and so that would moot the Tongass exemption rule and then potentially guide the federal government and other new rulemaking that it is under. And so, the state doesn't feel that the exemption rule has the same caliber of a decision that a decision from this court would have that finds the roadless rule should be vacated. And with that, unless there are further questions I'll reserve my remaining time for rebuttal. I have one question. What is the status of the lawsuit in the federal district court in Alaska, claiming that the 2020 rule was invalid. The federal government has since I believe March requested stays in that case they have not filed an answer the state has intervened in that case and filed an answer fully intending to defend the rule. The federal government declines to defend it. We also in that case submitted some affidavits about more forest management particulars that I tried to recall here for you since that wasn't a focus of our briefing, but that is the status of the case at its state. Okay, at least November. Thank you, Miss grambling. We'll hear from the government now Mr smelter. Good morning, your honors and may please the court john smelt serve for the Department of Agriculture and the Forest Service, your honors the road this rule is not presently applicable to the Tongass, and for that reason, we believe the challenges here and the other challenges that aren't moved. We have the standing problems because most of the claims here are Tonga specific and all of the concrete harms that the plaintiffs in this case have articulated relate to the Tongass. So it's either as a combination of mootness with respect to the Tonga specific claims or standing, we believe the claims are not presently justiciable. To start with the. There's another there's another problem to that you, you didn't mention that is we have a rule in this circuit, it goes back to heaven knows when I when the leading cases is by Justice Scalia when he was on the court called Carducci versus Reagan and the rule is that if you don't raise an issue and and and make an argument in your topside brief, then the court does not consider it. It's not good enough to raise it in a reply brief or even an oral argument. And I don't see a single argument in the state's blue brief that was filed in 2018 that deals solely with the true gosh. It's all Tonga. Yeah, that that's right. It illustrates that the focus of their claims and their injuries are the Tongass. I think what Miss Gramling would say is that the other claims are generally applicable to the roadless rule. And because, you know, the roadless rule applies to the to gadget. There's, there's a violation that pertains to the to catch. But, but to raise the there's a distinction, of course, between a violation of the law right and whether there's a concrete and particular injury and it's the absence of the injury with respect to that. The two gaps that matters. And so while we're talking about the two gaps. Let me talk about the two concrete areas that Miss Gramling raised to suggest standing and the one is the question of receipts on Forest Service land. And to clarify the law, there is a permanent statute at 16 USC section 500 which says the United States will share receipts that from a national forest with a state certain percentage. It's all receipts. It's not just timber receipts, but it's a receipt sharing statute. And then there is a public law that Congress has repeatedly reenacted that allows an alternative formula for states to receive an alternative payment in lieu of that receipts in recognition of the fact that timber receipts were dropping on lots of forests. So it's that in lieu of that allows states to receive a permanent payment that's not based on the actual receipts. And as Miss Gramling said there's a possibility, of course, the Congress doesn't, you know, re reenact that but that has been reenacted and that's been a part of the program in Alaska's complaint, they say they received receipts in 2009 on the two gaps. But in 2009, of course, the two gaps, which was subject to the road, let's rule and the complaint doesn't say whether those receipts were under this alternative program, what the receipts were from or how the receipts would be impacted by the road. Let's rule. And as Judge Ballard said, mentioned, I mean, the allegation that you receive receipts is not the same thing as the allegation that, you know, application of the roadless rule is going to diminish those receipts. Again, those receipts that are named in the complaint were receipts when the roadless rule was applicable to the two gaps and there's no argument that the application of the roadless rule is going to change the state's receipts. That is different than the circumstance that the state refers to in the Village of Cake on Monk decision, where the Ninth Circuit found standing with respect to receipts on the Tongass, there the Ninth Circuit specifically found that application of the roadless rule to the Tongass would affect the receipts that the state received. There is no allegation of impact with respect to receipts in this case. Is an allegation enough? This is a variant of the question I asked Ms. Gramling. It would seem since the underlying litigation is at summer judgment stage, not the pleading stage, that what's needed is pointed to some kind of evidence. Yes, Your Honor. And I think at this stage, an allegation would not be sufficient. But to the extent that the allegation is, you know, it's not sufficient either. Right. I mean, even if they could prove the facts as alleged, we received receipts in 2009. That's it doesn't say anything about whether they're injured by the roadless rule. And so the second area that Ms. Gramling spoke to was the question of the neighboring state lands and the question of whether management on Forest Service lands impacted management on state lands. And the suggestion in the complaint is that the lack of flexibility in the roadless rule prevents the Forest Service from doing fuels treatment and vegetation treatments that would minimize effects of wildfire. As Judge Randolph noted, there are exceptions that allow those kind of activities to go forward. There is generally those exceptions are related to generally small diameter trees. But there's no, again, allegation or evidence that the type of fuels treatment that would be needed and that you get would be prohibited by, you know, the harvest treatments pursuant to the exception. I do want to know one thing, though, with respect to the exceptions. It is an exception on on the treatments themselves, not an exception on road building. So the exception on on road building, to be fair to the state, applies only to where there's an imminent risk of fire and not to just the general advance treatment. But what I want to emphasize for the court is there is a lack of any specificity in the allegations by the state that that the absence of the ability to build roads with respect to treatments is impacting what the forest would do or impacting state management. And the state points to the forest plan for the Chugach in some of its briefing on the mootness issues. In the forest plan, the recently completed forest plan for the Chugach, there's also a whole section on fire conditions of the forest and fuels treatment and the like. And that data, which the state didn't refer to, represents that natural fire is not a significant concern on the Chugach. The much greater concern is human induced fires in the wildland urban interface where there are roads and the and the ability to come in and do treatments. This information, I have to say, obviously, is not in the record, not before the court. So I don't want to be unfair to Ms. Gramling. But what I want to illustrate is that the specifics as to the need for fuels treatment in the in the in the Chugach are not before the court in in in the allegations that are made and are relevant to this question of, you know, would would this be application of the road? Would this rule really change what the forest intends to do with respect to a fuel treatment or what they can do? And I would submit there is no evidence that there would be any difference with respect to what the forest can and would do to protect the at risk communities in the in and around the Chugach. With respect to the Tongass specific claims, we submit that those claims are moved because of the nature of the claims. Right. The NEPA procedural claims have, in effect, already been any relief. They could have been granted. It has already been granted. Right. The agency has already gone back and done a complete new NEPA review of the impacts of applying the roadless rule to the Tongass in the course of the 2020 Tongass exemption. And the question about that really more and maybe this is just all premature, but just conceptually. If the 2021 proposed de-exemption of the Tongass were to, in effect, revive the impact of the 2001 roadless rule, then it would seem that the procedural soundness or not of the 2001 rule under NEPA could be a live issue. And I'm just not sure how to think about. And again, maybe, as I said, maybe this is premature, but how to think about what the proposal is, you know, for example, if it is a proposal to just take away what was granted in the 2000 and the 2020 rule, then it would seem that the NEPA claim, as dated as it might feel, is a live claim as a formal matter. It wouldn't be because even if that's what the Forest Service does, it just says no more exemption. Roadless rule applies again. It's done. It's part of a rule. It's part of that rulemaking. The Forest Service has to consider everything they had to consider back in 2001. But they've already created a whole new record on that. And they've already, you know, part of Alaska's claims are, well, you didn't look closely enough at our concerns about the Tongass. Well, Alaska raised all of its concerns about application of the roadless rule to the Tongass in the most recent rulemaking on the 2020 exemption and in the NEPA review of that. And so they had a whole new chance to consider all of those things. Alaska says, well, you didn't take enough time in 2001. Well, you know, now we've taken a whole lot more time. Right. And there was a whole new procedure. And so ultimately, the NEPA analysis is going to depend on how Alaska renewed its concerns about the application of the roadless rule to the Tongass and how the Forest Service evaluated those claims in the context of the recent rulemaking, in addition to the old rulemaking. The old rulemaking is still relevant, of course, but obviously there's been an entirely new record that's been generated. And the Forest Service will have to look again at additional concerns and whether there needs to be any update to the NEPA analysis. And to review that, you know, the 2001 concerns about, you know, the timeline, you know, did they spend enough time? Did they consider, you know, when we brought up this particular issue just doesn't resonate with respect to the fact that there's a brand new opportunity, a brand new record on that. With respect to the Tongass Act itself, there's similar concerns. It's a substantive claim as opposed to a procedural claim. But if you look at the claim, the way Alaska is raising it in their brief, it's a very record specific claim. They're not saying that you can set the roadless rule next to the Tongass Act and, you know, a statement in the roadless rule conflicts with the Tongass Act. In order to find the conflict that they claim, you have to look at, you know, what are the impacts of this rule on the Tongass? And most specifically, what is the status of market demand and whether the forest can meet or seek to meet market demand on the Tongass from areas outside of inventory roadless areas? And again, there has been a complete new evaluation of market demand circumstances in relation to the exemption and in relation to the forest planning rule, the forest plan that came out in 2016. And so the market demand calculations have all been updated. And the most recent market demand calculations suggest that the National Forest can actually meet, and of course, the issue is seek to meet, but can actually meet market demand from outside inventory roadless areas. Now, I know Alaska is going to dispute whether those demand calculations were done correctly, right? But again, a whole new record that has not been looked at by any district court. And we submit that the proper course would be, you know, to the extent that Alaska still has the claims that it raised in 2001, they should be raised on the current state of affairs with respect to. Even though you labeled it substantive instead of procedural, that's sounding like, in your view, the reason the claims are moot as to that Tongass specific act are parallel to the reasons it's moot with respect to NEPA. So it sort of sounds like it's procedural. Well, whole new record for both, right? Whole new record, whole new decision on both. From your perspective, the reason that they're moot, even though you're labeling one substantive, one procedural, the reason they're moot is the same, is that there's a new record that will determine whether the claim is valid. Yes, sir. Can I ask you about the ANILCA claim vis-a-vis Tongass? Yes. Yeah, vis-a-vis Tongass. So the ANILCA claim is a substantive one because the argument is that there's been a withdrawal, that the roadless rule affected a withdrawal. And let's just talk about it vis-a-vis Tongass for a moment. And so that claim, if the current state of affairs continues and the roadless rule goes back into effect vis-a-vis Tongass, then at least as to that claim, substantively, it's the same. I think that's right. Yeah, it's essentially, I think Alaska is saying that that is the one claim that where Alaska is essentially saying on the face of the restrictions and roadless rule that it's incompatible with provisions. May I interject a question here? I mean, on the face of it, my understanding has always been that a withdrawal means in public land law, it means it's withdrawn from the public domain and therefore is exempt from statutes like the Homestead Act and the Desert Lands Act and several others that allow individual citizens to come in and claim particular property. Is that right? That's the way we understand it, Your Honor. And one of the ones that are relevant now to the national forest is the general mining law. Yeah, right. Well, it's a multiple use withdrawal. But the fact is that all of the land in a national forest has been withdrawn. It's been withdrawn for forest purposes. That's right. So I've never heard of such a thing as a withdrawal of a withdrawal. I mean, that's what the way I read Alaska's claim. And I share your confusion, Your Honor, because it is a little bit confusing because there are existing authorities now under the Federal Land Policy Management Act to withdraw public land from the public domain. That's a substantive answer to the claim, right? I was just asking about moodiness. Understood. I was trying to answer Judge Randolph's question. Yeah, no, of course. And you should. And I have the same question. But just to be clear on where we are in the architecture of the case, that that would mean that you get past moodiness and that would be the answer on the substance of the claim. But you're not arguing that the ANILCA claim vis-a-vis the Tongass is moot. Well, I guess what we're saying is, you know, the ANILCA claim, sure, if that were the only claim in the case, maybe we'd have a different view. But again, the rule doesn't apply. So there's a chance that the rule comes back. And the one and the only thing that I can tell that they're concerned with with respect to ANILCA withdrawal is the lack of an exception for mineral leasing. Right. And whether mineral leasing actually falls under the sort of the withdrawal idea is a separate question. But the Forest Service considered in 2001 an exception for road building for mineral leasing and decided not to. But they didn't close off the inventory roadless areas to leasing. They just said, you know, you can lease, but without new roads. I thought you could build roads to do mineral exploration. Yes, you can. And that's what I was trying to say under the general mining law, which is a different issue. That's locatable minerals. That's, you know, precious minerals, metals. You can do mineral location. You can cut trees as necessary to do it for a surface plan. You can build a road as necessary to provide reasonable access for prospecting and development of locatable minerals. The roadless rule doesn't affect that at all, which is why on the merits, the ANILCA claim has no basis. But with respect to standing again, if all the injuries are on the Tongass, roadless rule doesn't apply to the Tongass. If it's going to come back, there has to be a new rulemaking that the courts are going to have to consider. And, you know, prudentially, because it's kind of mirrored and tied to all these other claims, you know, it might make sense for the court to hold up on all the claims. But if the court wants to decide the ANILCA claim, you know, on the view that there is standing there, you know, we submit there's no merit to the claim for reasons that I've addressed. I thought that the discussion of the merits is useful, even though the chief pointed out that we were sort of backed into it via discussion of mootness. But I think, you know, as the discussion of each of the claims illustrates, the mootness argument does depend a little bit on whether, you know, a purely statutory interpretation facial claim with no record shift, it would seem less likely to be moot. Than a claim that depends on, for example, whether one has fulfilled procedural obligations under NEPA. That's correct, Your Honor. And we think that the principal claims here, the Tongass specific claims are clearly record specific types of claims. Okay, thank you. I just wanted to ask that, I mean, I guess the sort of predicate question about mootness under our American Bankers case, you know, it's the burden of the movement to establish mootness, it's a heavy burden. When you file the papers regarding mootness, there was nothing on the horizon about a potential new rule rolling back on the 2020 rule, but now there are very definite signs on the horizon about that. And I guess your answer to that is, that's all fine and good, but that creates new claims, it doesn't revive the old claims. That's sort of... The message of all this stuff about how record specific the old claims are? That's essentially correct, Your Honor. And with respect to the NEPA procedural claims in particular, you know, those clearly are new claims. Any relief that could have been provided with respect to any violation in 2001 has already been provided. You ordinarily just set it aside and send it back to the agency to do it again. The agency's already done it again, you know, in one context, and will do it again, you know, in the upcoming rulemaking, proposed rulemaking. Okay. If my colleagues don't have any additional questions for you, Mr. Smeltzer, we'll hear from Mr. Fine. Thank you, Your Honor. Thank you. Thank you, Your Honors. Ian Fine on behalf of Conservation Interveners. We agree with everything Mr. Smeltzer just said. Just a couple points I wanted to add. I think Judge Pillard's questioning about this being an appeal from somebody's judgment is exactly right in terms of the burden of establishing standing by evidence and not just allegations. And I think, you know, in terms of the suggestion of supplemental briefing or even this affidavit that Alaska submitted, I would direct Your Honors to this court's opinion in Swanson Group Manufacturing, which was also an appeal of summary judgment where the court said that it's actually not appropriate to be considering evidence, new evidence of standing on appeal from a summary judgment order that was submitted after the judgment was entered. You know, it may be that there would be a case where, for equitable reasons, that was justified. I don't believe that's the case here. Where standing was directly challenged below, Alaska had an opportunity to put in evidence of standing based on the Chugach. It did not. Further, when the mooting event as to the Tongass was something that the state of Alaska initiated with its petition for rulemaking, so I don't, you know, if there were some exception to that rule, I don't think it's been met here. In terms of the the questioning about the nature of the ANILCA claim and whether that is something that should survive, I guess I would also, I would point out that there is a flavor of a sort of record based aspect of this claim as well, in that, you know, they are not arguing that this, these, these inventoried roadless areas have actually been like expressly withdrawn. Their argument is more that it's sort of a de facto withdrawal. I'm sorry, you just were speaking quickly, this inventory. Sorry, yes, the roadless rule applies to inventoried roadless areas in the National Forest. And, you know, I don't understand the plaintiffs to be making an argument that these are expressly withdrawn, they're not. I think it's more of a claim that, you know, there's a sort of a de facto withdrawal. You know, it's not withdrawn, you know, Judge Randolph asked some questions about that too, but also, you know, the rule expressly allows for continued mineral leasing in the National Forest. So I understand their argument to be a little bit of that this is a de facto withdrawal and, you know, facts I think may be relevant to that for instance, a geothermal lease a mineral lease in fact has been granted in the Tongass on Bell Island. Under the roadless rule that we that's before the court in Exhibit C to our motion from a ban for a bans that was filed in September, 2018 it notes that a geothermal lease was granted. So, we have that affects the nature of the claim that's being made. Well, I think it may Your Honor I mean their argument is that this has been withdrawn from mineral leasing the roadless rule withdrew these lands for mineral leasing and the record would would show in a new case that in fact mineral leases are continuing to be granted in these areas under the roadless rule. So, so we agree with Miss with Mr smelter that, you know, the court like jurisdiction and I'm prepared with the remaining time to discuss the merits. If the panel would like that but if not, then we would submit. Just just circling back on a question that just Randolph had asked and, and the USDA had responded to. So, is the ultimate position that there's no withdrawal or just that there's no withdrawal affected by the roadless rule because as Judge Randolph pointed out a national forest is in it is categorically withdrawn, or, or not. Your Honor. Those are threshold. The claim fails for I think an even easier reason which is the one I was discussing which is, you know, even if one could have a withdrawal from a national forest. Withdrawal means to exempt from the operation of the public land laws and the roadless rule does not exempt any lands from the mineral leasing laws and mineral leasing laws still apply. But this example of this geothermal lease that was granted in Bell Island so I think the claim fails for an even more fundamental reason than that. It's a reason I guess it's just saying more specifically, you know, withdrawn or not, the roadless rule doesn't withdraw these lands from the only type of use type of. Use that they're identified. That's correct, Your Honor. Yeah, I mean as Mr Smeltzer discussed the general mining law still applies my, you know, access for for for mining is still allowed. And the road, the roadless rule also does not withdraw from mineral leasing which is, yes, Your Honor as you as you suggested the one type of use that plaintiffs have pointed to in support of their local argument. So, unless there are no further questions, Your Honor. We agree that that either the court should dismiss for lack of jurisdiction or to the extent as jurisdiction, it should affirm the judgment below. Thank you, Mr fine, Miss Gremlin will give you back your three minutes for rebuttal. Thank you, Your Honor. So, to address the receipts issue. The state's position is that as far as timber seats from that they're not limited to timber seats, state receives various types of mineral sharing and revenue sharing from national forest timbers is one aspect of that and the roadless rule, generally prohibits road construction and timber harvest and their serious developmental consequences to that and so the, the roadless rule limits activities to cash, and that has a negative impact on the receipts that Alaska secondly, Alaska, you know, we believe that our standing is self evident based on the allegations in our complaint, and our comments in the record. And, you know, we would certainly be happy to provide new information, but we could also do supplemental briefing on the documents that are already in record as well. What in your comments to the record, are you referring to, because I do think that you know there's this, there's a hurdle as Mr fine pointed out to when the summary judgment record was ruled on below to on appeal inviting new information but I think it's a quite a different question whether the information is there but just hasn't been really identified given that it wasn't as much of a sort of pointed focus at an earlier stage so you keep mentioning the comments of Alaska as containing information that would establish the harm that the roadless rule causes to the state in the true dodge, and is there any citation you'd want to give us on that. So the comments in the record that I'm referring to are the state's comments as part of the roadless rule process and so the state in the rulemaking made comments at various stages, and so I specific and that you'd want us to look at. I don't have anything specific off the top of my head for you but the, the state did make substantial comments and a large portion of those comments were statewide claims, not just toggle specific claims, the injuries are more acute and the Tongass certainly but that doesn't mean that they're non existent and to catch particularly when the to catch the roadless rule applies to nearly 99% of the two gaps so you know the two gaps is extremely restricted. And it is a very large forest in Alaska. And then also turning to the substance of the ANILCA claims real quickly. The state's position is that while withdrawal in other statutes does have the definitions suggested by the government. This brings us back to Surgeon and that Alaska is different, and the withdrawal provision in ANILCA needs to be construed in accordance with the broader balance of purpose in ANILCA, and then other sections of that same statute. And so, what was Congress concerned about well Congress was concerned about quasi wilderness and conservation units being established by the federal government because that was what Alaska was protesting and the mountain legal states case is shows that mineral leasing, you know, could be a withdrawal in that case is very poignant from an ANILCA standpoint because it was at the same time and with the same secretaries that were issued during the Carter administration, right before ANILCA was enacted and so those were the sorts of withdrawals that were concerned. And so my time is up so there's not any additional questions the state requests that the roadless rule be vacated. Thank you. Thank you, counsel. Thank you to all counsel will take this case under submission.
judges: Srinivasan, Pillard, Randolph